Lester C. Smith (deceased), Mary B. W. Smith, Testamentary Executrix v. Commissioner. Mary B. W. Smith v. Commissioner.
Smith v. Commissioner
Docket Nos. 14243, 14244.
United States Tax Court
1949 Tax Ct. Memo LEXIS 208; 8 T.C.M. (CCH) 385; T.C.M. (RIA) 49097; April 27, 1949
*208 Certain amounts were credited in 1943 on the books of his employer to "Lester C. Smith, Special Acct." as additional compensation for Smith's services rendered such employer. Held, that such amounts were not constructively received in 1943 and that respondent erred in including in each of Smith's and his wife's income as community income, one-half of those amounts. J. S. Derbes, Esq., 816 Carondelet Bldg., Mobile, Ala., for the petitioners. John P. Higgins, Esq., for the respondent. TYSON
Memorandum Findings of Fact and Opinion TYSON, Judge: The respondent determined a deficiency in income tax for the calendar year 1943 in the amount of $2,997.23 in Docket No. 14243 and in the amount of $3,026.39 in Docket No. 14244. The sole question presented in these consolidated proceedings, is whether *209 the marital community of Lester C. Smith and Mary B. W. Smith, his wife, constructively received during the year 1943 income of $9,875.85 as compensation for personal services rendered in that year by Lester C. Smith to the partnership of Doullut & Ewin, so that 50 per cent thereof was includible in the gross income of each of those individuals for 1943 as determined by respondent. Findings of Fact During the calendar year 1943 Lester C. Smith, sometimes hereinafter referred to as Smith, and his wife Mary B. W. Smith were residents of Louisiana and filed their respective separate income tax returns for that year on a community property basis with the internal revenue collector for the district of Louisiana. Lester C. Smith died on November 17, 1944, and Mary B. W. Smith qualified as testamentary executrix of his estate on January 11, 1945. She is now a resident of Mobile, Alabama. Prior to 1940 Smith had been a stockholder in the corporation, Doullut & Ewin. In 1940 the corporation was dissolved and Smith became a partner in the partnership then formed of Doullut & Ewin. On July 31, 1941, Doullut and Ewin purchased Smith's interest and on February 2, 1942, the firm of Doullut *210 & Ewin entered into a written agreement of employment with Smith. The agreement provided, inter alia, that for a period of one year from its date Smith was to receive a minimum salary of $1,000 per month and in addition thereto 12.19 per cent of the annual net profits of the partnership. The contract contained the following paragraph: "4: Except in the event of liquidation of the Partnership of Paul Doullut and J. P. Ewin, or in the event of Lester C. Smith ceasing to be, for any reason, an employee of the Partnership, Lester C. Smith shall not be entitled to receive any bonus out of the annual net profits of the firm until a fund of $75,000.00 of undivided profits arising from operations shall have been accumulated and set aside to take care of any losses sustained from operations, determined as set forth in paragraph 3 of this Agreement. In the event a net loss is sustained in any annual period, the amount thereof is to be applied in reduction of the said $75,000.00 undivided profits, and no further bonus shall be paid to Lester C. Smith until said fund shall have been restored to the original sum of $75,000.00. In the event of liquidation, or, if prior to liquidation, Lester *211 C. Smith ceases, for any reason, to be an employee to the Partnership, he shall be entitled to receive as bonus, 12.19% of the amount of undivided profits as set aside herein and remaining after any and all operating losses have been provided for." On February 1, 1943, the foregoing agreement was extended for a period of 12 months from that date. The proportionate share of Lester C. Smith in the contingent fund of $75,000 provided for by paragraph 4 of the above agreement is $9,142.50 or 12.19 per cent of that fund. During the years 1942 and 1943 the firm of Doullut & Ewin was engaged in the business of construction of shipyards, dry docks, and various maritime facilities for the United States and Maritime Commission, all of its work being done under prime and subcontracts. These contracts were subject to renegotiation under section 403 of the Sixth Supplemental National Defense Appropriation Act of 1942 and were being renegotiated in 1943. The firm of Doullut & Ewin carried on its books of account entitled "Lester C. Smith, Special Acct." and the account was intended to and did reflect the various charges and credits relating to the 12.19 per cent of the annual net profits *212 of the partnership which Smith was to receive under the agreement as additional compensation (sometimes hereinafter, for brevity, referred to as bonus) to his minimum salary of $1,000 per month. The entries on this special account from January 31, 1943 to July 15, 1946 were as follows: Date
Charges
Date
Credits
1943
1943
Nov. 30
$ 782.94
Jan. 31
$9,142.50
Dec. 9
5,000.00
Nov. 30
4,305.49
Nov. 30
11,353.30
1944
1944
April 14
18.34
Jan. 31
1,466.98
1946
June 30
2,438.00
June 30
4,876.00
July 15
13,152.99
The 1943 credits on the above account are explained as follows: That of $9,142.50 on January 31, 1943, represented the amount which Smith was required to keep on deposit as his 12.19 per cent proportion of the $75,000 reserve for contingent losses under paragraph 4 of the written agreement so long as he was to render services under that agreement; the credit of $4,305.49 on November 30, 1943, was for Smith's bonus for 1942 which could not be ascertained until the return in 1943 of equipment used by Doullut & Ewin in performing its contracts and which equipment was subject to recapture by the United States Government; the further *213 credit of $11,353.30 on November 30, 1943, was for Smith's bonus for 1943. All of these credits were made in 1943 before the effect on the profits of Doullut & Ewin of the renegotiation proceedings which were concluded in the summer of 1946, could be determined. The 1943 charges on the special account are explained as follows: That of $782.94 on November 30, 1943, was withdrawn to pay on Smith's victory tax; the charge of $5,000 on December 9, 1943, was for an amount Smith was permitted to withdraw. After setting apart the $9,142.50 representing Smith's proportion of the reserve for contingent losses, those two withdrawals reduced the 1943 credits applicable to Smith's bonus from $15,658.79 to $9,875.85, the amount in dispute. The charges on the special account of $2,438 and $4,876 on June 30, 1946, were adjustments resulting from the settlement of renegotiation proceedings and Smith's bonuses as set up by credits on the special account were reduced by these amounts. The $13,152.99 charge of July 15, 1946, was made merely to balance the special account. The funds credited in 1943 to Smith on the special account, except for the actual withdrawals totaling $5,782.94, were withheld *214 by the firm of Doullut & Ewin for the reason that they were from profits realized on contracts subject to renegotiation and which contracts were being renegotiated in that year. It was thoroughly understood between the firm of Doullut & Ewin and Smith at the times the 1943 credits of $4,305.49 and $11,353.30 were made that Smith had no right to withdraw the amounts thereof, or any part thereof, until renegotiation was completed. The renegotiation proceedings were settled in the summer of 1946 by an agreement that Doullut & Ewin had realized on its contracts excessive profits of $20,000 for 1942 and $40,000 for 1943. In July 1946 Smith's estate was paid the amount shown as balance due on the special account after deducting therefrom his 12.19 per cent of the excessive profits of Doullut & Ewin resulting from the renegotiation proceedings. Doullut & Ewin kept its books and reported its income on the accrual method for its fiscal years beginning February 1 and ending January 31 of each year. Smith and his wife each reported his or her income on the cash receipts and disbursements method and on a community property basis. Their returns for 1943 showed income from the partnership of *215 Doullut & Ewin in the amount of $61,429.81 less $19,018.35 standing as a credit in Smith's special account and consisting of the sum of $9,142.50 in the reserve for contingent losses and a remaining credit in the sum of $9,875.85. Respondent in determining the deficiencies added to each of the respective incomes of the spouses as reported, the amount of one-half of $9,875.85. Opinion It is obvious that no part of the $9,142.50 credit of January 31, 1943, was available to be withdrawn by Smith in 1943, since he was required to keep that amount on deposit as his 12.19 per cent portion of the $75,000 reserve for contingent losses provided for by paragraph 4 of the agreement, - so long as he was obligated to render services under that agreement, which obligation extended beyond 1943. We do not understand that respondent contends to the contrary, for, on brief, he argues that a limitation on withdrawal by Smith from his special account applied only as to the $9,142.50 credited to that account but withheld as part of the reserve for contingent losses. The question then is narrowed to whether there was unrestrictedly available for withdrawal by Smith in 1943 the amount of $9,875.85 *216 which is in controversy. This amount is arrived at by deducting from the amount of $15,658.79 (consisting of the sum of the two credits of $4,305.49 and $11,353.30 both dated November 30, 1943) the amount of $5,782.94 (the sum of the two charges, one being made on November 30, and the other on December 9, 1943, and representing actual withdrawals by Smith). We think the answer to this question must be that no part of the controverted amount of $9,875.85 was available to Smith or subject to unrestricted withdrawal by him in 1943, and that consequently he did not constructively receive that amount, or any part thereof, in 1943. In , the taxpayer had transferred oil leases to a corporation under an oral agreement on the part of the corporation to pay Kimbell $15,512.70 cash and commencing on January 1, 1934, to pay him a portion of the oil production until oil to the value of $114,250 had been received. Shortly prior to January 1, 1934, another oral agreement postponed this oil payment so that it was to begin September 16, 1936, and continue until the oil of the specified value was received together with an additional $15,000. The Commissioner *217 assessed a deficiency for the years 1934 and 1935 on the theory of constructive receipt of the oil involved during those years. In its opinion holding that the Commissioner's action was erroneous, the Board of Tax Appeals said: "* * * It is only by giving recognition to the first oral agreement entered into at the time the leases were assigned to the corporation that the respondent has any semblance of reason for his determination that the individuals constructively received the income in question. If the parties had a right to make the first oral agreement, they had a right to make the second, and our only concern is whether these agreements actually existed and were intended as real, genuine, bona fide agreements between the parties. * * *" In , the taxpayer had a written agreement of employment with a corporation which provided that the taxpayer should receive a share of the corporation's profits for 1940 and such share should be payable in 1941, the taxable year there involved. Thereafter, a further written agreement provided that the taxpayer's share in the 1940 profits ($87,076.40) should not be payable in 1941 but should be payable in *218 1942. In deciding that the taxpayer did not constructively receive the $87,076.40 in the taxable year of 1941 we cited the Kimbell case, supra, as controlling, saying, inter alia, "In both cases there was an agreement to pay at a particular time indefinite amounts, and, prior to the date on which these amounts were due or could be determined, payment was deferred." We have found as facts that the contracts upon which the net profits of Doullut & Ewin were realized and which included Smith's 12.19 per cent share, were subject to renegotiation and were being renegotiated throughout and beyond 1943, and that at the times the credit entries of $4,305.49 and $11,353.30 were made in the special account it was thoroughly understood between Smith and the firm of Doullut & Ewin that because of the renegotiation proceedings no part of such amounts could be withdrawn by Smith until those proceedings were settled, which was not done until 1946. That such undertaking was bona fide and arrived at in the regular course of business is plainly apparent since it was impossible until the conclusion of the renegotiation proceedings to arrive at Smith's 12.19 per cent share of the firm's net profits *219 and that only such an arrangement would comport with the exercise of sound judgment on the part of Doullut & Ewin. Under these facts we think the principle applied in the Kimbell and Veit cases, supra, applies with equal controlling force here, and we conclude that no part of the $9,875.85 in question should be included in the income for 1943 of either Smith or his wife Mary B. W. Smith. Cf. . The respondent erred in his determination. However, since the record does not conclusively show that in determining the asserted deficiencies respondent did not make any other adjustments not now controverted by petitioners, decision in each proceeding will be entered under Rule 50. Decision will be entered in each proceeding under Rule 50.